**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| JODY VENDITTI,<br><br>      Plaintiff,<br><br>vs.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA; KINDRED HEALTHCARE OPERATING INC. EMPLOYEE MEDICAL AND WELFARE BENEFITS PLAN,<br><br>      Defendants. | No. 18-CV-25-LRR<br><br>**REPORT AND RECOMMENDATION ON APPEAL OF ADMINISTRATIVE DECISION** |

_____

**TABLE OF CONTENTS**

**I.    INTRODUCTION**..............................................................................3

**II.   JURISDICTION AND VENUE**......................................................3

**III.  BACKGROUND**............................................................................3

    **A.   The Parties**..........................................................................3

    **B.   The Plan**..............................................................................4

    **C.   Factual Background**............................................................4

    **D.   Procedural Background**......................................................5

**IV.  ANALYSIS**....................................................................................7

    **A.   Whether Unum's interpretation and application of "contributed to" were reasonable**..................................................8

        **i.   Unum did not abuse its discretion when it interpreted "contributed to"**..........................................9

            **a.   Whether the *Wickman* test must be applied in this case**..............................................10

b.      **Whether Unum's interpretation of "contributed to" was reasonable**............................................................10

       i.      *Discussion of the Finley Factors*......................12

           a.      *Factor 1, whether Unum's interpretation is consistent with the goals of the Plan* .........12

           b.      *Factor 2, whether Unum's interpretation renders any language of the Plan meaningless or internally inconsistent*......................13

           c.      *Factor 3, whether Unum's interpretation conflicts with the substantive or procedural requirements of the ERISA statute*............14

           d.      *Factor 4, whether Unum has interpreted the words at issue consistently*......................15

           e.      *Factor 5, whether Unum's interpretation is contrary to the clear language of the Plan* ................................................15

       ii.      *Conclusion on the Finley Factors* .....................16

    ii.      **Whether Unum reasonably applied its interpretation of "contributed to" to the facts of this case and whether the fact-based determinations were supported by substantial evidence on the record** .............................................................17

       a.      **Whether Unum reasonably applied its interpretation of "contributed to" to the facts of the claim** ..................17

       b.      **Whether Unum's fact-based determinations were supported by substantial evidence on the record** .........19

   B.      **Unum met its burden of proof** ................................................22

V.      **CONCLUSION** ..........................................................................23

# I.   INTRODUCTION

The matter now before me is Plaintiff Jody Venditti's appeal from Defendant Unum Life Insurance Company's ("Unum's") administrative decision denying accidental death and dismemberment insurance benefits under an insurance policy issued pursuant to the Employee Retirement Income Security Act, 29 U.S.C. Sections 1001, *et. seq.* ("ERISA"). (Doc. 3.)   The Honorable Linda R. Reade, United States District Court Judge, referred this matter to me for a Report and Recommendation.

For the following reasons, I respectfully recommend that the Court **affirm the administrative decision.**

# II.   JURISDICTION AND VENUE

Under ERISA, this Court has jurisdiction to review Unum's denial of Plaintiff's claim.  29 U.S.C. § 1132(e)(1).   Venue is appropriate in the Northern District of Iowa because the alleged breach occurred in the District.  *See* 29 U.S.C. § 1132(e)(2) (Action may be brought, *inter alia*, in the district court where the breach took place).

# III.   BACKGROUND

## A.   The Parties.

Plaintiff Jody Venditti was the sister of Jamie Schnede.  (Docs. 18 at 3-4; 19 at 2.)  Mr. Schnede was enrolled in life insurance and accidental death and dismemberment insurance policies through his employer Kindred Healthcare, and Venditti was designated as Mr. Schnede's beneficiary under both policies. (Docs. 3 ¶ 7; 18 at 4; 19 at 2.)  Venditti is a resident of Lowden, Cedar County, Iowa.  (Doc. 3 ¶ 1.)

Unum Life Insurance Company of America is a life insurance company that did business in Linn County, Iowa at all times relevant to this litigation.  (*Id.* ¶ 8.)  Defendant Kindred Healthcare Operating, Inc. Employee Medical and Welfare Benefits Plan ("Kindred") is an employee medical and welfare benefits plan that provides accidental death and dismemberment insurance to its participant employees.  (*Id.* ¶¶ 3-4.)  The plan administrator for Kindred is located in Louisville, Kentucky.  (*Id.* ¶ 6.)  Kindred is subject to the laws, provisions, and regulations of ERISA.  (*Id.* ¶ 5.)  Kindred's plan

administrator delegated discretionary authority to Unum to make benefit determinations under the Plan. (*Id.* ¶ 9.) (Defendants will collectively be referred to as "Unum.")

**B.    The Plan.**

Jamie Schnede's accidental death and dismemberment insurance plan provided that his beneficiary would receive payment if his death was "the direct result of an accident," which the Plan defined as "accidental bodily injury." (Doc. 17 at 183.) Under the Plan, accidental bodily injury means "bodily harm caused solely by external, violent and accidental means and not contributed to by any other cause." (*Id.* at 194.) In relevant part, the Plan "does not cover any accidental losses caused by, contributed to by, or resulting from [the following]:

- the use of any prescription or non-prescription drug . . . or other chemical substance unless used according to the prescription or direction of your dependent's physician. This exclusion will not apply to you or your dependent if the chemical substance is ethanol.

                    .    .    .

- alcohol in combination with any drug, medication, or sedative ["the combination exclusion"].

(*Id.* at 187.) The Plan defines "intoxicated" as "your or your dependent's blood alcohol level equals or exceeds the legal limit for operating a motor vehicle in the state where the accident occurred." (*Id.* at 195.)

**C.    Factual Background.**

The factual background of this case is largely undisputed. On June 24, 2017, at 10:27 p.m., Mr. Schnede was attempting to cross a six-lane highway in Tampa, Florida when he was struck by a car and died from his injuries. (Docs. 18 at 4; 19 at 2.) Mr. Schnede was attempting to cross the highway "near its intersection" with another road (Doc. 18 at 4) where "[t]here was no crosswalk and no traffic light." (Doc. 19 at 2.) The driver of the vehicle was travelling at forty miles per hour and the posted speed limit was forty-five miles per hour. (Doc. 17 at 250.)

An autopsy performed by the Hillsborough County Medical Examiner concluded that Mr. Schnede's cause of death was "Basilar Skull and Cervical Vertebral Fractures with Contusions of Brain and Traumatic Axonal Injury due to Blunt Impact to Head and Neck." (*Id.* at 290.) The manner of death was "Accident (Pedestrian struck by automobile)." (*Id.*) The Medical Examiner's toxicology report revealed that at the time of his death, Mr. Schnede had a blood alcohol content ("BAC") of 0.40 grams per deciliter (*Id.* at 299), which was five times more than the legal limit to lawfully drive or be in actual physical control of a vehicle. Fla. Stat. § 316.193(1)(b). The autopsy also showed that Mr. Schnede had tetrahydrocannabinol ("THC")—the active ingredient in marijuana—in his system. (Doc. 17 at 299.) Unum contends that the level of THC found in Mr. Schnede's system was "recreational." (Doc. 19 at 2.)

## D.  Procedural Background.

Venditti filed a claim with Unum for benefits under the Plan's life and accidental death and dismemberment policies. (Docs. 18 at 5; 19 at 2.) Unum approved the claim for life insurance benefits and denied the claim for accidental death and dismemberment benefits. (Docs. 17 at 384; 18 at 5; 19 at 2.) In its denial, Unum stated that it reviewed the following documents: (1) the Group Life and Accidental Death Claim Form, (2) a copy of the Certified Death Certificate, (3) the Florida Traffic Crash Report, (4) the Hillsborough County Report of Diagnosis and Autopsy, and (5) the Hillsborough County Medical Examiner Toxicology Report. (Doc. 17 at 385.) Unum's medical reviewer stated that Mr. Schnede had a recreational level of THC in his system and a BAC that was five times the legal limit for legal intoxication in the state of Florida at the time of his death.[1] (*Id.*) Unum stated:

> A person with a blood alcohol level of 0.40% may experience disorientation; mental confusion; loss of critical judgment (including loss of self-control, reasoning, and the ability to detect danger); apathy; general inertia, approaching paralysis; disturbance of sensation and of perception of color, form, motion, dimensions; markedly decreased response to

---

[1] Unum did not identify its medical reviewer.

> stimuli; marked muscular incoordination; inability to stand or walk; incontinence or urine or feces; impaired consciousness; sleep or stupor. Death is also possible at this level.
>
> In addition, our review indicates the combination of blood alcohol and THC can result in distorted perception, difficulty in thinking and problem-solving. Alcohol and THC would have at least a combined additive impairing effect.

(*Id.*) Unum's reviewer presented no evidence regarding which, if any, of the above symptoms Mr. Schnede experienced.

Unum based its denial on the Plan's exclusion for "accidental losses caused by, contributed to by, or resulting from[] alcohol in combination with any drug, medication, or sedative," and the Plan's definitions of "accidental bodily injury" and "intoxicated." (*Id.* at 385-86.)

After Venditti administratively appealed the denial of benefits, Unum again denied the claim because Mr. Schnede's death "did not result from an accidental bodily injury as defined in the policy (bodily harm caused solely by external, violent and accidental means not contributed to by any other cause) because it was contributed to by intoxication due to the use of alcohol in combination with a drug (THC)." (*Id.* at 424.) On appeal, Unum referenced the traffic crash report, which it called "The Police Report," and again cited its own medical review, stating that Mr. Schnede's BAC was five times the level generally recognized as legally intoxicated, which would cause

> disorientation, confusion, loss of critical judgment (including loss of self-control, reasoning and ability to detect danger). This level of intoxication would cause disturbed perception and incoordination, as well as other side effects, including possibly death. Mr. Schnede also had a recreational level of THC in his blood. The short effects of marijuana use include distorted perception, difficulty thinking and problem-solving, loss of coordination, and other side effects. The alcohol and THC would have had an additive impairing effect in combination.

(*Id.*) Unum concluded, "Mr. Schnede was extremely intoxicated from the combination of alcohol and THC, which caused, contributed or resulted in his decision to attempt to

cross the six-lane road at a location without traffic signals or a crosswalk at night," as well as his failure to yield to or avoid the vehicle that hit him. (*Id.* at 424-25.) Therefore, Mr. Schnede's injuries were not caused "solely by external, violent and accidental means" as required for payment under the Plan. (*Id.* at 425.)

In addition, Unum denied coverage under the exception for "accidental losses caused, contributed to by, or resulting from alcohol in combination with any drug, medication, or sedative" because Mr. Schnede was intoxicated due to his use of alcohol and THC. (*Id.*)

Venditti next filed suit in the Iowa District Court in and for Linn County to pursue benefits under the accidental death and dismemberment policy. (Doc. 3.) Unum removed the case to this Court based on federal question jurisdiction under ERISA, 29 U.S.C. Sections 1132(e)(1) and (f) and 28 U.S.C. Section 1331. (Doc. 1. ¶ 8.)

On March 1, 2018, Unum filed a Motion to Strike Jury Demand (Doc. 6) and a Motion to Dismiss Count 2 of the Complaint, a state law claim for breach of contract (Doc. 7). Venditti did not resist either motion. (Docs. 10, 11.) Both motions were granted on March 26, 2018. (Doc. 14.) The instant motion was fully briefed on September 17, 2018.

## IV.    ANALYSIS

ERISA provides that a beneficiary may bring a civil action to recover benefits due to her under the terms of an employee welfare benefit plan. 29 U.S.C. § 1132(a)(1). Although the statute does not specify the scope of judicial review applicable to ERISA claims, in *Firestone Tire & Rubber Co. v. Bruch,* the Supreme Court held that a denial of benefits challenged under ERISA is subject to de novo review unless the terms of the benefit plan give the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan. 489 U.S. 101, 115-16 (1989). When a plan confers such discretionary authority, the administrator's decision is given deference and reviewed under an abuse of discretion standard. *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 111 (2008). "Under an abuse of discretion standard of review, a plan administrator's

decision will stand if reasonable; *i.e.*, supported by substantial evidence." *Ortlieb v. United HealthCare Choice Plans*, 387 F.3d 778, 781 (8th Cir. 2004) (internal citations and quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 781-82 (quoting *Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1179 (8th Cir. 2001) (internal quotation omitted)).

However, when a conflict of interest exists because the plan administrator is both the decision-maker and the insurer, the court must "take that conflict into account and give it some weight in the abuse-of-discretion calculation." *Carrow v. Standard Ins. Co.*, 664 F.3d 1254, 1259 (8th Cir. 2012). Under ERISA, the insurer has the burden to prove that a coverage exclusion applies. *Nichols v. Unicare Life & Health Ins. Co.*, 739 F.3d 1176, 1184 (8th Cir. 2014).

Unum was granted the discretionary authority to make benefit determinations under the accidental death and dismemberment policy, and the policy indicates that Unum is the insurer under the policy. (Doc. 17 at 142, 203.)[2] Venditti acknowledges Unum has such discretionary authority. (Doc. 18 at 4.)

## A. Whether Unum's interpretation and application of "contributed to" were reasonable.

The Plan provides that benefits will be paid only if "an accidental bodily injury" is the cause of the harm. (Doc. 17 at 183.) Under the Plan, an "accidental bodily injury" is "bodily harm caused solely by external, violent, and accidental means and not *contributed to* by any other cause." (*Id.* at 194) (emphasis added.) Unum denied

---

[2] Venditti has neither alleged nor shown, however, that Unum's dual role as decision-maker and insurer caused Unum to breach the fiduciary duty owed to Venditti. *See Ortlieb*, 387 F.3d at 782 (holding that a plan beneficiary may be entitled to a less deferential standard of review when the beneficiary presents "material, probative evidence demonstrating" that the plan administrator operated under a conflict of interest that "caused a serious breach of the plan administrator's fiduciary duty to [the beneficiary]"). I will therefore consider whether Unum's denial of benefits amounted to an abuse of discretion and will take Unum's inherent conflict of interest into account when doing so. *See Nichols*, 739 F.3d at 1181.

Venditti's claim for benefits because Mr. Schnede's death "did not result from an accidental bodily injury as defined in the policy . . . because it was contributed to by intoxication due to the use of alcohol in combination with a drug (THC)." (*Id*. at 424; *see also id*. at 385.)

As such, Unum relied on the definition of "accidental bodily injury" as set forth in the Plan as the principal basis for denying Venditti's claim. I therefore must consider whether Unum abused its discretion in interpreting and applying the definition of "accidental bodily injury," specifically, the words "contributed to," as used in that definition and the exclusions that apply to this case.[3]

The Eighth Circuit applies a two-step analysis to determine whether the plan administrator abused its discretion. First, the court must determine whether an administrator abused its discretion in interpreting the language. *King v. Hartford Life & Accident Ins. Co*., 414 F.3d 994, 999 (8th Cir. 2005) (en banc). Second, the court must determine whether the administrator reasonably applied its interpretation to the facts of the case. *Id*. at 1017.

### i. Unum did not abuse its discretion when it interpreted "contributed to."

Venditti argues that under *Wickman v. Nw. Nat'l Ins. Co.*, 908 F.2d 1077 (1st Cir. 1990) and cases citing it with approval in the Eighth Circuit, decedent's death was an accident and therefore should be covered under the Plan. Unum replies that it did not rely on the *Wickman* test and instead relied on the "plain language" of the policy when it denied her benefits, and therefore, the *Wickman* test should not be applied in this case.

---

[3] The following discussion focuses on the words "contributed to." Resolution of whether Unum properly interpreted "contributed to" not only resolves whether Unum properly denied Venditti's claim based on the definition of "accidental bodily injury," but also resolves whether Unum properly denied the claim based on the combination exclusion because Venditti does not deny that Mr. Schnede had both alcohol and THC in his system at the time of his death.

### a. Whether the *Wickman* test must be applied in this case.

"*Wickman* may be treated as a statement of federal common law for the definition of 'accident' under an ERISA plan in which the term is not unambiguously defined." *West v. Aetna Life Ins. Co.,* 171 F. Supp. 2d 856, 886 (N.D. Iowa 2001). The court must conduct an accident analysis if there is no applicable policy exclusion. *McClelland v. Life Ins. Co. of N. Am.,* 679 F. 3d 755, 761-62 (8th Cir. 2012) (comparing lack of policy exclusion in policy at issue with example of policy exclusion in case wherein *Wickman* analysis was unnecessary, *River v. Edward D. Jones Co.*, 646 F.3d 1029, 1031 (8th Cir. 2011)).

Unlike the situation in *Wickman,* there is no issue about whether Mr. Schnede died as a result of "an accident."[4] No one disputes that an accident contributed to Mr. Schnede's death. The issue in the instant case is the Plan language that requires that the "Accidental Bodily Injury" be "*caused solely by* external, violent and accidental means and *not contributed* to by any other cause." (Doc. 17 at 194) (emphasis added.) In other words, the analysis that Unum undertook (and which I undertake now) presupposes that Mr. Schnede's collision with a motor vehicle was, in fact, "an accident" under *Wickman.* The issue is whether another cause contributed to the death.

### b. Whether Unum's interpretation of "contributed to" was reasonable.

Venditti asserts that Unum is "using a tortured interpretation of the exclusionary language" to deny her benefits. (Doc. 18 at 15.) Venditti argues that "a practical and reasonable reading" of the exclusion means that it applies to deaths caused by acute

---

[4] Under *Wickman*, an event is an accident if the decedent did not expect to suffer the type and kind of injury incurred, and the suppositions underlying that expectation are reasonable. *West v. Aetna Life Ins. Co.,* 171 F. Supp. 2d 856, 883-84 (N.D. Iowa 2001). The determination of whether a supposition is reasonable should be made from the point of view of the insured. *Id.* at 883. When evidence is insufficient to determine the insured's subjective expectation, the court should consider whether a "reasonable person with background and characteristics similar to the insured would have viewed the injury sustained by the injured highly likely to occur as a result of the insured's intentional conduct." *Id.* at 884 (quoting *Wickman*, 908 F.2d at 1088).

alcohol poisoning or drug overdoses, rather than situations where people die "with the mere presence of alcohol or drugs onboard at the time of death." (*Id.*)

When the meaning of a policy term is at issue, the court must defer to the plan administrator's interpretation of the term, if the administrator's interpretation is reasonable. *Donaldson v. Nat'l Union Fire Ins. Co.*, 863 F.3d 1036, 1039 (8th Cir. 2017). To determine whether the plan administrator's interpretation is reasonable, the court examines the following five factors ("the *Finley* factors"):

> (1) whether [Unum's] interpretation is consistent with the goals of the Plan, (2) whether [Unum's] interpretation renders any language of the Plan meaningless or internally inconsistent, (3) whether [Unum's] interpretation conflicts with the substantive or procedural requirements of the ERISA statute, (4) whether [Unum has] interpreted the words at issue consistently, and (5) whether [Unum's] interpretation is contrary to the clear language of the Plan.

*Id.* (citing *King*, 414 F.3d at 999 (quoting *Finley v. Special Agents Mut. Benefit Assoc., Inc.*, 957 F.2d 617, 621 (8th Cir. 1992)). Although the *Finley* factors inform the analysis, the "dispositive principle remains": a court cannot disturb a reasonable interpretation of a disputed term, even if it would have interpreted the term differently. *Id.*

This case turns on the interpretation of "contributed to," as the phrase is used in the Plan's definition of "accidental bodily injury." Accordingly, if Mr. Schnede's blood alcohol content and apparent THC use just prior to his death "contributed to" Mr. Schnede's death, Unum will have properly denied benefits.

Unum did not determine that Mr. Schnede's intoxication and use of THC directly "contributed to" Mr. Schnede's death. Rather, Unum determined that Mr. Schnede's intoxication and use of THC "contributed [to] or resulted in [Mr. Schnede's] decision to attempt to cross the six-lane road . . . ." (Doc. 17 at 424.) As such, Unum interpreted "contributed to" to include those factors that led to the action—Mr. Schnede's decision to cross the highway—that ultimately resulted in Mr. Schnede's death.

### i.    Discussion of the Finley Factors.

In its brief, Unum addressed Factors 3 and 5.  (*See* Doc. 19 at 10-11.)  Venditti's briefs ignore the *Finley* factors.

### a. Factor 1, whether Unum's interpretation is consistent with the goals of the Plan.

Neither Party addressed Factor 1, whether the Plan administrator's interpretation is consistent with the goals of the Plan.  The goal of the Plan is to provide "financial protection for [an enrollee's] beneficiary by paying a benefit in the event of [his] death." (Doc. 17 at 149.)  The amount a beneficiary is owed is determined "according to the terms and provisions of the [P]lan." (*Id.*)  ERISA imposes fiduciary duties on Unum to administer the Plan "prudently" and in the interest of all Plan participants and beneficiaries.  (*Id.* at 202.)  Under ERISA, a plan fiduciary

> shall discharge his duties with respect to the plan solely in the interest of the participants and beneficiaries and
> (A)    for the exclusive purpose of:
> > (i)    providing benefits to . . . beneficiaries; and
> > (ii)    defraying reasonable expenses of administering the plan; [and]
> (D)    in accordance with the documents and instruments governing the plan. . . .

29 U.S.C. § 1104(a)(1)(A)(i)-(ii),(D).

Courts recognize that a goal of all insurance policies is to pay only meritorious claims so as to preserve plan assets for deserving plan members. *See e.g., Tillery v. Hoffman Enclosures, Inc.,* 280 F.3d 1192, 1199–1200 (8th Cir. 2002) (finding that denying payments for some procedures provides better coverage for more people); *Cash v. Wal-Mart Grp. Health Plan*, 107 F.3d 637, 643 (8th Cir. 1997) (reasoning that purpose for plan exclusion was to insure "actuarial soundness" of plan); *Davidson v. Wal-Mart Assocs. Health & Welfare Plan,* 305 F. Supp. 2d 1059, 1086 (S.D. Iowa 2004) (finding that paying an uncovered claim does not further the purpose of benefitting all plan members).

In a case with similar facts, the Southern District of Iowa affirmed a plan's interpretation of the language, "any loss which is caused by You, and is the result of injuries You receive while Intoxicated." *Hanna v. United of Omaha Life Ins. Co,* 553 F. Supp. 2d. 1064, 1066 (S.D. Iowa 2008). In *Hanna,* the accidental death and dismemberment benefit decision turned on the interpretation of the word "caused," and the plan concluded that because the decedent's BAC of .149 led to his standing in dark clothing on a dark section of an interstate at 2:00 a.m. where he was hit by a car and killed, his death was caused as a result of injuries he received while intoxicated. *See id.* at 1071, 1073. The court held that this interpretation was consistent with the goals of the plan in that case, which was to only pay meritorious claims. *Id.* at 1070 (citations omitted).

Likewise, Unum's interpretation of "contributed to" is reasonable because it is consistent with the goal of providing benefits only "in accordance with the documents and instruments governing the plan," and includes exclusions for non-meritorious claims. This interpretation serves the interests of all Plan participants who would suffer financial loss if Unum were to pay non-meritorious claims leaving no funds to pay future meritorious claims.

I further find that, like the *Hanna* plan's interpretation of "caused," Unum's interpretation of "contributed to" is consistent with the goals of the Plan. Factor 1, therefore, weighs in favor of finding that Unum's interpretation of "contributed to," is reasonable.

### b. Factor 2, whether Unum's interpretation renders any language of the Plan meaningless or internally inconsistent.

Unum's interpretation of "contributed to" does not render any language of the Plan meaningless or internally inconsistent, and neither Party argues that it does so. As such, I find that Factor 2 weighs in favor of finding that Unum's interpretation of "contributed to," is reasonable.

### c. Factor 3, whether Unum's interpretation conflicts with the substantive or procedural requirements of the ERISA statute.

Substantively, "ERISA does not require an employer to offer accidental death benefits; therefore, the level of benefits to be provided is within the control of the private party creating the Plan." *Hanna,* 553 F. Supp. 2d at 1070. Procedurally, ERISA seeks to strike a balance between ensuring fair and timely enforcement of rights under employee benefit plans while also encouraging the creation of such plans. *See Conkright v. Frommert*, 559 U.S. 506, 517 (2010). Because ERISA's goal is to ensure fair and prompt enforcement of rights to benefits, "ERISA requires employee benefit plans to 'provide adequate notice' to any participant or beneficiary whose claim is denied, 'setting forth the specific reasons for such denial' in a manner 'calculated to be understood by the participant.'" *King*, 414 F.3d at 999 (quoting 29 U.S.C. § 1133).

With respect to Factor 3, Unum argues that because ERISA does not require it to offer accidental death benefits, the level of benefits to be provided is within its control. (Doc. 19 at 10) (quoting *Hanna,* 553 F. Supp. 2d at 1070.)

I find that Unum's interpretation does not deprive Venditti of any substantive benefit, nor does it conflict with the procedural requirements of the statute.

Furthermore, I find that Unum complied with the procedural requirements of the ERISA statute by providing Venditti adequate notice of the reasons her claim was denied. In its initial review and review on appeal, Unum stated which documents it reviewed, and explained why the 0.40% BAC and presence of THC in Mr. Schnede's blood were so important to its decision. (*Id.* at 385-86, 424-25.) In both decisions, Unum listed some of the impairments that Mr. Schnede may have experienced when he crossed the highway, and Unum based its denials on the facts as they applied to the relevant Plan language, specifically the Plan definitions of "intoxicated," "accidental bodily injury," and the combination exception. (Doc. 17 at 385-86, 424-25.)

In conclusion, because Unum's interpretation of "contributed to" does not conflict with the substantive or procedural requirements of the ERISA statute, Factor 3 weighs in favor of finding that Unum's interpretation of "contributed to," is reasonable.

### d. Factor 4, whether Unum has interpreted the words at issue consistently.

As demonstrated by the discussion of Factor 3, Unum has been consistent in how it has interpreted the words "contributed to" in this case. *See Hanna,* 553 F. Supp. 2d at 1070-71) (finding Factor 4 weighed in favor of plan when plan consistently relied on plain language of the plan in correspondence with beneficiary). Moreover, since neither Party made arguments related to Factor 4, there is no indication that Unum has not interpreted the words at issue in this case consistently with the way it has interpreted the same words in other cases. *See Darvell v. Life Ins. Co. of N. Am.,* 597 F.3d 929, 936 (8th Cir. 2010) (when plaintiff did not claim decision on Factor 4 (numbered Factor 5 in the case) was unreasonable, defendant did not abuse discretion on Factor 4); *Cash,* 107 F.3d at 644 n.7 (Factor 4 supported insurance company's interpretation when neither party argued that company's interpretation of terms deviated from its standard applicable definitions); *Finley,* 957 F.2d at 621 (affirming insurance company's decision, in part, because there was no suggestion that company's interpretation of "confrontational situation" was inconsistent). *But see West,* 171 F. Supp. 2d at 896 (giving Factor 4 no weight in the analysis when there was no evidence in the record regarding how the insurance company had previously interpreted "accident"). Factor 4 weighs in favor of finding that Unum's interpretation of "contributed to," is reasonable.

### e. Factor 5, whether Unum's interpretation is contrary to the clear language of the Plan.

When analyzing whether an administrator's interpretation is "contrary to the clear language of the Plan," it may be necessary to consult "the ordinary, dictionary definition of words." *Finley,* 957 F.2d at 622. The Plan does not define "contributing to," and I therefore find it necessary to consult a dictionary to determine the plain meaning of

15

"contributing to." The employees' copy of the Plan is written in plain English (Doc. 17 at 165), so I will consult a non-legal, rather than a legal, dictionary.

*Webster's Dictionary* defines "contributing to" as "to be an important factor in; to cause." *Random House Webster's Unabridged Dictionary* 442 (Wendalyn R. Nichols, et al. eds, 2d ed. 1986). When Unum's interpretation is read in light of the relevant dictionary definition, Unum's interpretation is not contrary to the clear language of the Plan. Unum determined that Mr. Schnede's intoxication contributed to, or was "an important factor in" Mr. Schnede's decision to cross the highway.

It is reasonable to infer that Mr. Schnede's extreme intoxication contributed to his attempt to cross a busy highway in the dark when cars were likely to be present; when it would be difficult to see him; and, as he should have known, his senses and reactions would have been impaired. Moreover, Venditti has cited no evidence that Mr. Schnede found himself in the street for reasons *other* than his own ill-judged attempt to make a crossing. Absent Mr. Schnede's attempt to cross the highway, Mr. Schnede would not have been struck by an oncoming vehicle and killed.

Intoxication was not Mr. Schnede's direct cause of death. Mr. Schnede did not, for example, succumb to alcohol poisoning. However, the inquiry need not end there. Unum could and did reasonably conclude that Mr. Schnede's intoxication "was an important factor in" in his decision to enter a busy roadway at night when he should have recognized his senses were impaired and thus intoxication was also an important factor in his ultimate death. As such, although not necessarily the primary cause, Unum could reasonably conclude that intoxication was an important factor in causing Mr. Schnede's death. I therefore conclude that Factor 5 weighs in favor of finding that Unum's interpretation of "contributed to" is reasonable.

### ii. Conclusion on the Finley Factors.

Having analyzed all five *Finley* factors, I find that all five weigh in favor of finding that Unum's interpretation of "contributed to" is reasonable, and Unum did not abuse its

discretion when it interpreted "contributed to" in the way it did. This, however, does not end the inquiry.

**ii. Whether Unum reasonably applied its interpretation of "contributed to" to the facts of this case and whether the fact-based determinations were supported by substantial evidence on the record.**

ERISA seeks to ensure that employee will not be "left empty-handed once employers have guaranteed them certain benefits." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). To this end, once a court has determined that a plan's interpretation of its term was reasonable, the Eighth Circuit requires the court to decide 1) if the plan administrator "reasonably applied its interpretation of the term to the facts of the claim," and 2) if the fact-based determinations were supported by substantial evidence on the record. *Hanna*, 553 F. Supp. 2d at 1068 (citations omitted). "In sum, an administrator with discretion under a benefit plan must articulate its reasons for denying benefits . . . and the decision must be supported by both a reasonable interpretation of the plan and substantial evidence in the materials considered by the administrator." *King*, 414 F.3d at 1000.

**a. Whether Unum reasonably applied its interpretation of "contributed to" to the facts of the claim.**

Unum concluded that Mr. Schnede's death was not caused "solely by external, violent and accidental means" as required by the Plan, but rather was "contributed to by" combined alcohol and THC intoxication because Mr. Schnede was

> extremely intoxicated . . . which caused, *contributed [to]* or resulted in his decision to attempt to cross the six-lane road at a location without traffic signals or a crosswalk at night, as well as his failure to yield to the motor vehicle, and his inability to avoid the motor vehicle that hit him.

(Doc. 17 at 424-25) (emphasis added.)

Unum continued by quoting the definition of accidental bodily injury: "bodily harm caused solely by external, violent and accidental means and not *contributed to* by

any other cause." (*Id.* at 425) (emphasis added.) Unum then stated why it concluded that Mr. Schnede's death had been contributed to by another cause:

> Mr. Schnede's intoxication from alcohol and THC *contributed to* his decision to cross the six-lane road without a traffic signal or crosswalk and his failure to yield to the car or his inability to avoid being hit by the car. The bodily injuries were not caused solely by external, violent, and accidental means because they were *contributed to* by combined alcohol and THC intoxication.

(*Id.*) (emphasis added.) Unum concluded that Venditti was not entitled to benefits because Mr. Schnede did not suffer an accidental bodily injury, as defined by the Plan, because the death was contributed to by his intoxication due to alcohol and THC. (*Id.*)

Unum reasonably applied its interpretation of "contributed to" to the facts of the claim. For every place above where the phrase "contributed to" is italicized, the phrase "to be an important factor in" or a grammatically appropriate equivalent can be substituted. For example,

> Schnede was "extremely intoxicated . . . which *was an important factor in* or resulted in his decision to attempt to cross the six-lane road. . . .

> Unum continued by quoting the definition of accidental bodily injury: "bodily harm caused solely by external, violent and accidental means and not one in which another cause *was an important factor*."

> Mr. Schnede's intoxication from alcohol and THC *was an important factor in* his decision to cross the six-lane road without a traffic signal or crosswalk . . . The bodily injuries were not caused solely by external, violent, and accidental means because combined alcohol and THC intoxication *was also an important factor* in the injuries.

Venditti did not present any facts at the administrative level that she argues Unum did not consider in making its decisions. Venditti's only argument is that Unum did not give the medical examiner's ultimate conclusion regarding Mr. Schnede's cause of death the weight it deserved by completely ignoring the combination exclusion. Venditti presents no plausible argument why Unum would or should ignore the exclusion.

Therefore, I find that Unum reasonably applied its interpretation of "contributed to" to the facts of Venditti's claim.

### b. Whether Unum's fact-based determinations were supported by substantial evidence on the record.

Once a court has determined that a plan interpreted its terms reasonably, it must decide if the plan's fact-based determinations were supported by substantial evidence on the record. *Hanna*, 553 F. Supp. 2d at 1068 (citations omitted). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938). ERISA requires claim denials to "provide adequate notice . . . setting forth the specific reasons for such denial . . . calculated to be understood by the [beneficiary]." 29 U.S.C. § 1133(1). Accordingly, plan administrators must "briefly state the facts of the case and the rationale for their decision, and [must not] allow claimants to be sandbagged by after-the-fact plan interpretations devised for purposes of litigation." *King,* 414 F.3d at 999 (internal citations and quotations omitted).

In this case, Unum reviewed Venditti's claim form, Mr. Schnede's death certificate, the crash report, the autopsy report, and the toxicology report. (Doc. 17 at 385, 423.) In addition, Unum had its own medical reviewer interpret the evidence in the record. (*Id.* at 385, 424.) The autopsy report concluded that Mr. Schnede's cause of death was "Basilar Skull and Cervical Vertebral Fractures with Contusions of Brain and Traumatic Axonal Injury due Blunt Impact to Head and Neck" and that his manner of death was "Accident (Pedestrian struck by automobile)." (*Id.* at 290.) The accident report stated that Mr. Schnede failed to yield to the automobile that hit him and that he was "not visible" on that night due to his wearing dark clothing, no lighting, or some other factor. (*Id.* at 252.) Based on its review of these documents, Unum concluded that Mr. Schnede's death was "contributed to by" combined alcohol and THC intoxication because Mr. Schnede was

extremely intoxicated . . . which caused, contributed [to] or resulted in his decision to  attempt to cross the six-lane road at a location without traffic

signals or a crosswalk at night, as well as his failure to yield to the motor vehicle, and his inability to avoid the motor vehicle that hit him.

(*Id.* at 424-25.)

Venditti asserts that because Mr. Schnede's death certificate only lists one cause of death, his traumatic head and neck injuries, when there are spaces for two causes of death, Unum's conclusions are not supported by substantial evidence in the record. Venditti also argues that there is no evidence in the record indicating that Mr. Schnede was experiencing any of the "laundry list of symptoms" Unum states people with a BAC of 0.40% and with THC in their systems will experience, and therefore, Unum's conclusions are not supported by substantial evidence in the record.  (Doc. 18 at 14.) Venditti, however, did not present any evidence at the administrative level, and does not attempt to present any here, regarding Mr. Schnede's mental or physical condition on the night of his death.  Thus, the only facts in the record are the medical examiner's findings, the toxicology report, the crash report, the death certificate, and the information from Unum's medical reviewer.

I find that Unum's fact-based determinations were supported by substantial evidence on the record.  First, I do not find Unum's conclusions at odds with the death certificate.  A death certificate issued by the Florida State Registrar based on reading an impersonal autopsy contains only ministerial information about a person's life and death. (Doc. 17 at 31.)  It is a vital records document that gathers information the state or other entities may use to carry out their functions.  (*Id.*)  As such, a death certificate will not go "behind the cause" to create a story of the death it documents.

Second, although there is no evidence in the record other than the crash report regarding Mr. Schnede's behavior at the time of his death, Unum's statements in its denials are reasonable based on what science knows about the effects of alcohol and THC

on peoples' abilities. Venditti was free to present evidence to Unum during the administrative process that she thought would bolster her claims. *See River,* 646 F.3d at 1033-34 (plaintiff introduced evidence that decedent did not exhibit outward signs of intoxication before he crashed his motorcycle and died); *Tran v. United of Omaha Life Ins. Co.,* 780 F. Supp. 2d 965, 973 n.9 (D. Neb. 2011) (explaining that plaintiff could have introduced medical treatises at the administrative level but refusing to admit them on review). Since Venditti failed to do so, I find that that the toxicology report and the well-known impairments people experience as a result of intoxication constitute substantial evidence in the record. *See id.* at 970, 972-74 (finding that forensic toxicology report and medical reviewer's opinion constituted substantial evidence in absence of other evidence in case wherein decedent had BAC above legal limit and some cannabis in his blood when he drove around a railroad crossing arm, was struck by a train, and killed); *Redeaux v. S. Nat'l Life Ins. Co.,* 424 F. App'x 271, 274 (5th Cir. 2011) (finding that evidence supported conclusion that insurer did not abuse its discretion when it determined that the insured's death "occurred as a result of the commission of a crime" under Louisiana law because decedant had BAC over legal limit to drive in that state when he died in single-car accident); *Lankford v. Webco, Inc.,* 545 F. Supp. 2d 961, 972 (W.D. Mo. 2008) (affirming denial of benefits when claimant was injured in single-car accident with a BAC over the legal limit when plan language excluded injuries arising from the use of alcohol in excess of the legal limit as prescribed by state or federal statute.) *Strasser v. Unum Life Ins. Co.*, No. C00-129MJM, 2001 WL 1645731, at *6 n.2 (N.D. Iowa Aug. 14, 2001) (declining to engage in speculation about other reasons driver might have crashed when driver died in single car crash and had BAC over legal limit because even if plaintiff could prove something else also contributed to driver's accident, his BAC surely caused or at least contributed to his death).

Third, Unum noted that it was dark at the time of Mr. Schnede's death and that he was crossing a six-lane highway with no crosswalk, no median where he crossed, and no traffic signal. (*Id.* at 424-25.) Unum listed the possible impairments one could

experience with a BAC of 0.40%, and the impairments one could experience with a recreational amount of THC in his system, and concluded that Mr. Schnede would have been "extremely intoxicated from the combination of alcohol and THC, which caused, contributed [to] or resulted in his decision to attempt to cross the six-lane road at a location without traffic signals or a crosswalk at night, as well as his failure to yield to the motor vehicle, and his inability to avoid the motor vehicle that hit him." (*Id*.) All of the above, except, perhaps, the "inability to avoid the motor vehicle that hit him," is taken almost verbatim from the accident report. And, to the extent that statement is not supported by the record, I find the error harmless because the statement is factually duplicative of "failure to yield," which is supported in the record.

To the extent Venditti makes an argument based on Factor 5, she seems to argue that Unum should have given more weight to the fact that Mr. Schnede's official cause of death was head and neck trauma. However, Unum did not ignore this fact, but instead referred to it four times in its final decision. (*Id*.) Unum reasonably applied Plan language to this fact when it stated the following:

> Mr. Schnede's intoxication from alcohol and THC contributed to his decision to cross the six-lane road without a traffic signal or crosswalk and his failure to yield to the car or his inability to avoid being hit by the car. The bodily injuries were not caused solely by external violent and accidental means because they were contributed to by combined alcohol and THC intoxication.

(*Id*.) Therefore, Unum's fact-based determinations were supported by substantial evidence on the record.

## B.    Unum met its burden of proof.

Having taken Unum's inherent conflict of interest into account while conducting this analysis, I now conclude that Unum met its burden of proof that the exclusion for "losses caused by, contributed to by, or resulting from[] Alcohol in combination with any drug, medication, or sedative" applied to Venditti's claim. Accordingly, Unum also met its burden of proof that Mr. Schnede's death was not an "accidental bodily injury"

under the Plan because it was not caused "solely by external, violent, and accidental means and not contributed to by any other cause." *See Strasser*, 2001 WL 1645731, at *6 n.2 (refusing to attempt to "dissect" decedent's intoxicated state from what might have physically caused him to lose control of his car and cause him to crash because "the suggestion that his blood alcohol level did not cause or contribute to the accident simply has no basis in the record").

Consequently, Unum's interpretation of "contributed to" was reasonable and Venditti's claim was properly denied under the Plan. Unum's decision should be affirmed.

## V.   CONCLUSION

**I respectfully recommend that the Court AFFIRM Unum's decision and enter judgment in favor of Defendants and against Plaintiff.**

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72(b)(2). Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009); *Wehrspann v. Dubuque Comm. Sch. Dist.*, No. 15-CV-1029-LRR, 2018 WL 3865379, at *1 (Aug. 14, 2018).

**IT IS SO ORDERED** this 13th day of December, 2018.



_____

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa